**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS WESTERN DIVISION**

| | |
|---|---|
| Troy B.,<br><br>*Plaintiff*,<br><br>*v.*<br><br>Frank J. Bisignano,<br>Commissioner of Social Security,<br><br>*Defendant*. | Case No. 3:24-cv-50397<br><br>Honorable Michael F. Iasparro |

## MEMORANDUM OPINION AND ORDER

Plaintiff Troy B. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying his applications for disability insurance benefits and supplemental security income.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

In September 2019, Plaintiff filed applications for disability insurance benefits and supplemental security income alleging a disability beginning on March 24, 2019, because of a work-related back injury, anxiety, depression, and post-traumatic stress disorder. R. 220, 227, 261. Plaintiff was 41 years old on his alleged onset date. Plaintiff's date last insured was December 31, 2023. Dkt. 1042.

Following a hearing, an administrative law judge ("ALJ") issued a decision in February 2021, finding that Plaintiff was not disabled. R. 13–24. Plaintiff sought judicial review of the ALJ's determination, and the court reversed and remanded the ALJ's decision. *Troy B. v. Kijakazi*, No. 3:21-CV-50325, 2023 WL 374300 (N.D. Ill. Jan. 24, 2023). The remand order directed the ALJ to reevaluate Plaintiff's mental ability to interact with others, noting that the ALJ failed to address and analyze evidence of Plaintiff's hospitalizations for homicidal ideation and suicide attempt. The court recommended that Plaintiff's hospitalization records be provided to the state agency psychiatric consultant for an updated report. The court also directed the ALJ to expand on her analysis of Plaintiff's use of drugs and alcohol.

Following a remand, on August 20, 2024, Plaintiff testified at another hearing before the same ALJ that issued the first decision. On September 3, 2024, the ALJ issued a second decision, which again found that Plaintiff was not disabled. R. 1041–57. The ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, status post-surgery; adult antisocial behavior; adjustment disorder with mixed anxiety and depressed mood;

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). *See* Dkt. 16.

and history of alcohol use disorder and cocaine use disorder. The ALJ determined that Plaintiff's impairments did not meet or equal a listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work with the following limitations:

> he cannot climb ladders, ropes, or scaffolds, occasionally stoop, kneel, crouch, crawl, and balance. He can understand, remember, and carry out simple instructions with sufficient persistence and pace to timely and appropriately complete job duties. He cannot perform at a production rate pace, such as on an assembly line or have strict hourly quota requirements, but can meet end of day requirements. He can interact with coworkers, supervisors, and the general public on an incidental basis, but cannot perform group, tandem, or team work and no problem solving tasks with the general public. He can make simple work related decisions and adapt to a routine and predictable work environment.

R. 1046–47. The ALJ found that Plaintiff had no past relevant work but there were jobs that existed in significant numbers in the national economy that he could perform.

Plaintiff did not file written exceptions to the ALJ's decision, and the Appeals Council did not otherwise assume jurisdiction of the case, making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. § 404.984. Plaintiff filed this action seeking judicial review of the ALJ's decision. Dkt. 1.

## STANDARD OF REVIEW

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* The court's review of the Commissioner's findings is subject to "a very deferential standard." *Thorlton v. King*, 127 F.4th 1078, 1081 (7th Cir. 2025). When reviewing the ALJ's decision, the court's inquiry is limited to determining whether the ALJ's decision is supported by substantial evidence or resulted from an error of law. *Mandrell v. Kijakazi*, 25 F.4th 514, 515 (7th Cir. 2022). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "The threshold for substantial evidence 'is not high.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052 (7th Cir. 2024) (quoting *Biestek*, 587 U.S. at 103). The substantial evidence standard is satisfied when the ALJ provides "an explanation for how the evidence leads to their conclusions that is sufficient to allow us, as a reviewing court, to assess the validity of the agency's ultimate findings and afford [the appellant] meaningful judicial review." *Warnell*, 97 F.4th at 1054 (internal quotation marks and citation omitted). To determine whether substantial evidence exists, the court reviews the record as a whole but "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's determination so long as substantial evidence supports it." *Id.* at 1052–53; *Beardsley v. Colvin*, 758 F.3d 834, 836 (7th Cir. 2014). Thus, "we will reverse an ALJ's decision only if the record compels a contrary result." *Thorlton*, 127 F.4th at 1081 (citation modified).

## DISCUSSION

Plaintiff challenges the ALJ's decision, arguing that the ALJ: (1) erred in finding that he did not suffer from any "marked" limitations from his mental impairments; and (2) made

substantial errors in her step five determination. As discussed below, the Court finds that the ALJ's decision is supported by substantial evidence.

**I. Paragraph B Criteria**

Plaintiff argues that the ALJ failed to properly assess his mental limitations. Specifically, Plaintiff argues that the "ALJ erred in finding that Claimant did not suffer from 'marked' mental impairments." Dkt. 15 at 5.

Pursuant to the court's prior order remanding this case, state agency psychiatric reviewing consultant Nicole Robicheau, Psy.D. reviewed Plaintiff's psychiatric hospitalizations from June 1, 2020 for homicidal thinking and July 7, 2020 following a suicide attempt. R. 2046–47. On February 5, 2024, Dr. Robicheau submitted a new opinion, now finding that Plaintiff suffered from severe mental impairments under Listings 12.04 (depressive, bipolar, and related disorders), 12.06 (anxiety and obsessive-compulsive disorders), 12.08 (personality and impulse-control disorders), and 12.15 (trauma- and stressor-related disorders). R. 2047. Dr. Robicheau also provided an opinion on Plaintiff's mental RFC, which the ALJ ultimately adopted, while also including further limitations to "no production rate pace as on an assembly line or strict hourly quota requirements but can meet end of day requirements, and no group tandem or team work and no problem solving tasks with the general public. These additional limitations accommodate the claimant's alleged difficulties interacting with others." R. 1046–47, 1053.

Plaintiff does not challenge the new and "very limiting RFC" determination made by the ALJ on remand or the ALJ's reliance on Dr. Robicheau's new opinion. Dkt. 15 at 8. Instead, Plaintiff takes issue with the ALJ's paragraph B evaluation, arguing that despite evaluating additional evidence relating to Plaintiff's 2020 psychiatric hospitalizations on remand, the ALJ "summarily gave the same moderate ratings" in two of the four broad areas of mental functioning as she did in her first decision. Dkt. 29 at 1. In evaluating the paragraph B criteria for Listings 12.04, 12.06, and 12.08, the ALJ determined that Plaintiff's impairments resulted in moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. R. 1045–46.[2] If Plaintiff's mental impairments caused at least two "marked" limitations or one "extreme" limitation in a broad area of functioning, a listing could be met. R. 1045. "Marked" restrictions or difficulties are serious limitations of the ability to function "independently, appropriately, effectively, and on a sustained basis" in a given area, representing a four on a five-point scale, with one being no limitation and five being "extreme limitation" in a given area. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2).

Plaintiff seems to be arguing that because the ALJ considered new evidence on remand, including Dr. Robicheau's revised opinion which resulted in a more restrictive RFC, the ALJ was also required to make new, more limiting findings on Plaintiff's mental functioning at step 3. Despite Plaintiff's argument to the contrary, the ALJ complied with the court's prior remand order. In remanding back to the ALJ for a new decision, the court did not establish that Plaintiff's hospitalizations resulted in disabling functional limitations. Rather, the court required the ALJ to

[2] The ALJ found that Plaintiff had mild limitations in the other two broad areas of mental functioning. R. 1045–46.

assess Plaintiff's functional limitations after considering the additional evidence. *See Surprise v. Saul*, 968 F.3d 658, 663 (7th Cir. 2020) ("If an issue is left open after remand, the lower tribunal is free to decide it.").

The court highlighted the importance of considering the "longitudinal picture" of Plaintiff's condition. *Troy B.*, 2023 WL 374300, at *5. In remanding for the ALJ to specifically consider Plaintiff's two psychiatric hospitalizations, the court left the door open for the same functional findings despite consideration of the contrary evidence. *See id.* ("Although a longitudinal view of the record may still have shown that Plaintiff had only a moderate limitation in interacting with others, the ALJ could not reach that conclusion without addressing the contrary evidence."). Following the court-ordered remand, the ALJ, and Dr. Robicheau, had the opportunity to consider Plaintiff's psychiatric hospitalizations and his associated symptoms and weigh that evidence against the longitudinal record showing subsequent improvement in his anger and anxiety with medication and abstinence from drugs and alcohol. After evaluating all the evidence, the ALJ determined that the same paragraph B findings were warranted. Plaintiff has failed to show that the ALJ's determination was not supported by substantial evidence. The ALJ considered the evidence the court directed her to consider and reconciled them with the longitudinal treatment record before reasonably relying on Plaintiff's documented improvement with medication and sobriety.

Plaintiff takes issue with the fact that the ALJ did not specifically address Listing 12.15 relating to his PTSD. Although Dr. Robicheau evaluated Listing 12.15 and found that Plaintiff suffered from PTSD, Plaintiff does not argue how the ALJ's consideration of his PTSD would have changed the limitations imposed by the ALJ. Plaintiff makes no argument that his PTSD had any functional impact, and he fails to cite any recent records where he sought treatment for PTSD. *See Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018) (unpublished) ("[P]ointing to various diagnoses and complaints and saying that they might hinder [the claimant] is insufficient to establish the existence of a functional limitation."). The ALJ's failure to explicitly address Listing 12.15 does not necessitate remand, especially where the paragraph B criteria for Listing 12.15 are the same criteria for the listings the ALJ did address.

Plaintiff also argues that the ALJ's moderate limitation in interacting with others is inconsistent with Dr. Robicheau's opinion that Plaintiff was limited to interacting with others on an incidental basis. But Plaintiff provides no support for the argument that an RFC restriction limiting Plaintiff to incidental contact is insufficient to address a moderate limitation in interacting with others. Plaintiff merely points to evidence in the record documenting his incarcerations, along with his participation in anger management and substance abuse counseling. However, Plaintiff does not argue that the ALJ failed to consider this evidence. Instead, the ALJ fashioned additional, more restrictive social limitations to Dr. Robicheau's mental RFC to address this evidence and "accommodate the claimant's alleged difficulties interacting with others." R. 1053. The ALJ specifically addressed Plaintiff's anger, irritability, and anxiety in the decision and found that the "longitudinal objective medical evidence does not support more than moderate social limitations." R. 1055. The ALJ reasoned that Plaintiff's

> symptoms have improved with adherence to his medications and abstinence from alcohol and cocaine. He had some minor conflict with staff members and cellmates,

> but the environment of being incarcerated is far more restrictive and intense than a work environment. Despite these conflicts, he consistent[ly] denied suicidal or homicidal ideation (20F; 22F). Although he reported anger and irritability, and had anxious mood at times, his mental status exam showed he was pleasant and cooperative, and generally showed he had normal mood and affect (20F; 22F). Overall, the longitudinal objective medical evidence does not support more extreme social limitations, and his symptoms are accounted for with incidental contact with no group tandem or team work and no problem solving tasks with the general public and no production rate pace as on an assembly line or strict hourly quota requirements but can meet end of day requirements. These limitations should reduce his stress and any potential conflict with coworkers, supervisors, or the general public.

R. 1055. Plaintiff does not address this portion of the ALJ's well-reasoned analysis. Despite Plaintiff's argument to the contrary, he merely disagrees with how the ALJ weighed the evidence in an attempt to reweigh the evidence on appeal, which this Court cannot do. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

Plaintiff's objection to the moderate limitation in concentrating, persisting, or maintaining pace is even less supported. The extent of Plaintiff's argument in his motion is: "The ALJ finds a moderate limitation in Claimant's ability to concentrate in [sic] maintain pace. In support of this finding, she cites to 11F an outdated consultative evaluation that this Court specifically found to be stale when rendering its prior decision." Dkt. 15 at 6–7. Although the consultative examination from December 2019 did not address Plaintiff's psychiatric hospitalizations from 2020, Plaintiff provides no authority that the ALJ was unable to rely on the evaluation where Plaintiff has alleged a disability beginning on March 24, 2019. In his reply, Plaintiff points to his records from Sheridan Correctional Center between August 2022 and November 2022 to argue that his record documented, among other things, hallucinations, irritability, poor concentration, and memory impairment. Dkt. 29 at 4.

As with most mental health disorders, the mental status examinations show both normal and abnormal findings throughout the relevant period. Within the records relied on by Plaintiff, which the ALJ addressed throughout her decision, Plaintiff fails to acknowledge that there were also reports that Plaintiff's memory was intact, his concentration was within normal limits, and he was cooperative with a clear and coherent thought process, noting improvement in his symptoms with medication. *See, e.g.*, R. 1925, 1938, 1946, 1949, 1954, 1961, 1967, 1983, 1987. Plaintiff makes a cursory argument that the evidence submitted on remand was "limited due to the failure of Sheridan Correctional Facility to comply with subpoenas for records," and that this limited his "ability to provide the full scope of his condition." Dkt. 15 at 7–8. "Mere conjecture or speculation that additional evidence might have been obtained in [a] case is insufficient to warrant a remand." *Orienti v. Astrue*, 958 F. Supp. 2d 961, 974 (N.D. Ill. 2013) (quoting *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994)); *see also White ex rel. Smith v. Apfel*, 167 F.3d 369, 375 (7th Cir. 1999) ("Speculation is, of course, no substitute for evidence, and a decision based on speculation is not supported by substantial evidence."). Moreover, despite the issue with the subpoena, Plaintiff's counsel confirmed at the hearing that the record was complete. R. 1069. For all these reasons, Plaintiff has not shown that the ALJ committed legal error or that her decision on Plaintiff's mental

limitations was not supported by substantial evidence.

**II. Step Five**

Plaintiff alleges that the ALJ made numerous errors in her step five determination. Specifically, Plaintiff argues that the ALJ: (1) improperly relied upon a vocational expert ("VE") who utilized "vague and improper methodology;" (2) failed to identify and resolve an obvious conflict in the VE's testimony; (3) ignored VE testimony that was favorable to Plaintiff; and (4) failed to address Plaintiff's post-hearing letter objecting to the VE's testimony. Dkt. 15 at 8.

First, Plaintiff takes issue with the VE's methodology for generating job numbers. As relevant to this appeal, the ALJ posed a hypothetical claimant that could interact with coworkers, supervisors, and the general public on an incidental basis, but could not perform group, tandem, or teamwork. R. 1094–95. In response, the VE testified that the individual could work as a housekeeping cleaner, Dictionary of Occupational Titles ("DOT") 323.687-014, with 100,000 jobs in the national economy; a garment sorter, DOT 222.687.014 with 50,000 jobs in the national economy; and a mail clerk, DOT 209.687.026 with 25,000 jobs in the national economy. R. 1094–95.

As to his methodology, the VE testified that to calculate jobs numbers, using the housekeeping cleaner position as the example, he reviewed the "county business patterns," which informed him of "how many hotels exist, how many people work in those hotels, and then I estimate, based on my professional experience, the amount of — the number of housekeeping cleaners that would be within those hotel establishments. And then I also factor jobs for only full-time work using data from the Census Bureau study." R. 1096. In response to questions by Plaintiff's counsel, the VE testified that any supervisor intervention would not exceed incidental contact. R. 1097. The VE also testified that a housekeeper would be expected to help a hotel guest that reports a problem, but qualified such contact as incidental. R. 1099–1100. The VE testified that his testimony was consistent with the DOT. R. 1100. In a post-hearing letter, Plaintiff questioned the VE's testimony that a housekeeper could maintain incidental contact. R. 1438. Plaintiff also argued that the VE's testimony about the methodology used for calculating job numbers was vague. *Id.*

Plaintiff argues that "the VE's methodology was obviously flawed and unreliable," such that it did not provide substantial evidence for the ALJ's step five determination. Dkt. 15 at 9. To survive judicial review, the VE's "estimation of job numbers must provide a modicum of confidence in its reliability." *Thorpe v. Bisignano*, 148 F.4th 432, 437 (7th Cir. 2025) (internal citation marks omitted). Plaintiff does not address the VE's testimony that his job numbers were not only consistent with the DOT but also based on his professional experience, training, and education as a board-certified rehabilitation counselor working with job placement for individuals with disabilities. Plaintiff has also not challenged the VE's qualifications. A VE that "provides a reasoned explanation based on hands-on experience working in the field, market surveys, or conversations with employers, can establish sufficient confidence in his job-number estimates." *Cain v. Bisignano*, 148 F.4th 490, 500 (7th Cir. 2025) (confirming an ALJ's reliance on a VE's testimony that the plaintiff could perform 59,000 jobs that exist in the national economy where the VE "used the Department of Labor publications, factored in county business patterns, and

estimated the number of full-time positions based on Census Bureau data"). The VE's testimony here did just that, thereby providing a "sufficient indicia of reliability" needed for the ALJ to rely on the VE's testimony. *Thorpe*, 148 F.4th at 438.

Nevertheless, Plaintiff criticizes the VE for not stating which counties he utilized as the basis for his job numbers. Plaintiff does not elaborate on why the VE was required to provide such information, especially when it was not requested at the hearing. *See Fetting v. Kijakazi*, 62 F.4th 332, 339 (7th Cir. 2023) (finding that "the VE was not required to provide every detail of his calculations"); *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (noting that if the claimant had made her objections at the hearing, the VE could have said more on those specific issues). Instead, Plaintiff argues that the VE's job numbers were flawed because Job Browser Pro identified only 172 garment sorter jobs nationally (compared to 50,000) and 13,178[3] mail clerk jobs nationally (compared to 25,000). Dkt. 15 at 10. But Plaintiff does not explain why the VE's numbers were wrong. The VE provided sworn testimony concerning the number of jobs available, including the basis for those estimates, and Plaintiff's subsequent submission with job numbers of his own merely offers competing numbers rather than identifying a specific defect in the VE's methodology. Plaintiff's alternative calculation does not, standing alone, establish that the VE's testimony was unreliable or unsupported by substantial evidence.

Moreover, Plaintiff does not rebut the 100,000 housekeeping jobs testified to by the VE. Accordingly, the Commissioner argues that the ALJ identified significant jobs in the national economy that Plaintiff could perform. *See* Dkt. 21 at 10 (citing *Milhem v. Kajakazi*, 52 F.4th 688, 697 (7th Cir. 2022) (finding 89,000 jobs in the national economy was sufficient in that case)); Plaintiff does not address that 100,000 housekeeper jobs head on or concede that this position makes up a significant number of jobs on its own. *See Sok v. Kijakazi*, No. 21-3039, 2022 WL 17413558, at *2 (7th Cir. Dec. 5, 2022) ("Sok cannot credibly argue that jobs such as cafeteria attendant or housekeeper do not 'exist in significant numbers in the national economy.'"). Instead, Plaintiff attempts to undercut the VE's testimony in support of the job number. However, Plaintiff's arguments do not suggest that the VE's testimony was flawed or that the ALJ erred in relying on this testimony to reach her step five determination.

Plaintiff criticizes the VE's housekeeping job numbers because they differed from the numbers provided at the first hearing. But contrary to Plaintiff's argument, this does not undermine the VE's job numbers. The VE from the first hearing testified there were 425,000 housekeeping jobs in the national economy for an individual with a less restrictive mental RFC than Plaintiff, namely occasional contact with others. *See* R. 18, 23. It would only make sense that a more restrictive RFC would have fewer jobs available.

Next, Plaintiff argues that the ALJ failed to address an obvious conflict between the VE's testimony and the DOT job description for the housekeeper position in violation of Social Security Ruling 00-4p.[4] Plaintiff provides almost no support for this argument in her motion. In her reply, Plaintiff states that a conflict exists between Plaintiff's limitation to incidental contact with the

[3] In his motion, Plaintiff mistakenly states there were 15,767 jobs. Dkt. 15 at 10; *see* R. 1438–39 (identifying 13,178 jobs).

[4] SSR 00-4p was in effect at the time of the hearing and the ALJ's decision in 2024. In January 2025, it was replaced by SSR 24-3p.

general public and the "core duty of the housekeeping position," namely to "render[] personal assistance to patrons." DOT, 323.687-014 Cleaner, Housekeeping (4th ed. 1991), 1991 WL 672783. Without further elaboration, Plaintiff concludes that the "ALJ did not identify and resolve this obvious conflict between a limit to incidental contact with the public and this core duty." Dkt. 29 at 5. This Court disagrees.

The VE specifically testified that a housekeeper would be required to periodically assist hotel guests, as is outlined in the DOT job description. *See* DOT, 323.687-014 Cleaner, Housekeeping (4th ed. 1991), 1991 WL 672783. However, Plaintiff does not point to anything in the DOT description that suggests assisting hotel guests would require more than incidental contact. In fact, in response to questions by Plaintiff's counsel, and consistent with Plaintiff's RFC, the VE testified that such contact with the public remained incidental. R. 1100. Plaintiff fails to address this portion of the VE's testimony. Furthermore, Plaintiff provides no authority for this Court to credit counsel's "basic logic" that housekeepers are frequently in contact with hotel guests "beyond incidental contact" when the VE testified to the contrary based on his experience as a board-certified rehabilitation counselor. Dkt. 15 at 10; R. 1100.

Lastly, Plaintiff's objection to the ALJ ignoring favorable testimony and his post-hearing letter likewise does not support a remand. Plaintiff argues that the ALJ improperly ignored the VE's testimony that any kind of verbal threat from an employee could result in immediate termination. *See* R. 1098. Yet, Plaintiff merely concludes that the ALJ ignored favorable testimony without identifying the evidence in the record that undermined the ALJ's step five determination in light of this testimony. *See Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 704 (7th Cir. 2010) ("[I]t is not this court's responsibility to research and construct the parties' arguments, and conclusory analysis will be construed as waiver."). Plaintiff also provides no authority that the failure to address a post-hearing letter in itself constitutes an error requiring a remand, especially when the issues raised in the letter do not warrant a remand for the reasons outlined above. Therefore, Plaintiff has not shown that the ALJ erred in her determination at step five.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted. The Commissioner's decision is affirmed.

Entered: September 30, 2026

By: ______________________
Michael F. Iasparro
United States Magistrate Judge